## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1   At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2   Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the
3   24th day of March, two thousand twenty-three.
4
5   PRESENT:
6               DENNIS JACOBS,
7               MYRNA PÉREZ,
8               SARAH A. L. MERRIAM,
9                       *Circuit Judges.*
10  _____
11
12  SL-X IP SA.R.L., SL-X Technology UK Ltd., SL-
13  X Technology USA LLC, SL-X Trading Europe
14  Ltd., and SL-X Trading USA LLC,
15
16                      *Plaintiffs-Appellants*,
17
18          v.                                              Nos. 21-2697, 21-2699
19
20  Merrill Lynch, Pierce, Fenner & Smith Inc.,
21  Merrill Lynch L.P. Holdings, Inc., Merrill Lynch
22  Professional Clearing Corp., Credit Suisse AG,
23  Credit Suisse Securities (USA) LLC, Credit Suisse
24  First Boston Next Fund, Inc., Credit Suisse Prime
25  Securities Services (USA) LLC, Goldman Sachs &
26  Co. LLC, J.P. Morgan Securities LLC, J.P.
27  Morgan Prime, Inc., J.P. Morgan Strategic
28  Securities Lending Corp., J.P. Morgan Chase
29  Bank, N.A., Morgan Stanley & Co. LLC, Prime
30  Dealer Services Corp., Strategic Investments I,

1

| | |
|---|---|
| 1 Inc., UBS AG, UBS Americas Inc., UBS | |
| 2 Securities LLC, UBS Financial Services Inc., | |
| 3 EquiLend LLC, EquiLend Europe Ltd., EquiLend | |
| 4 Holdings LLC, | |

1     Inc., UBS AG, UBS Americas Inc., UBS
2     Securities LLC, UBS Financial Services Inc.,
3     EquiLend LLC, EquiLend Europe Ltd., EquiLend
4     Holdings LLC,

6                    *Defendants - Appellees,*

8     Bank of America Corp., Goldman Sachs Group,
9     Inc., Goldman Sachs Execution & Clearing, L.P.,
10    J.P. Morgan Chase & Co., J.P. Morgan
11    Institutional Investments Inc., UBS Group AG,
12    UBS Investment Bank, UBS Asset Management
13    (US) Inc., UBS Fund Services (USA) LLC, Credit
14    Suisse Group AG, Morgan Stanley, Morgan
15    Stanley Capital Management, LLC, Morgan
16    Stanley Distribution, Inc.,

18                    *Defendants.*[*]

20 _____

| | |
|---|---|
| 22 **FOR PLAINTIFFS-APPELLANTS:** | RISHI BHANDARI (Evan Mandel, Robert Glunt, *on the brief*), Mandel Bhandari LLP, New York, NY. |
| 26 **FOR DEFENDANTS-APPELLEES** <br> 27 **MORGAN STANLEY & CO. LLC,** <br> 28 **PRIME DEALER SERVICES CORP.,** <br> 29 **AND STRATEGIC INVESTMENTS I, INC.:** | LAUREN M. ROSENBERG (Michael A. Paskin, *on the brief*), Cravath, Swaine & Moore LLP, New York, NY. |
| 31 **FOR DEFENDANTS-APPELLEES** <br> 32 **MERRILL LYNCH, PIERCE, FENNER** <br> 33 **& SMITH INC., MERRILL LYNCH L.P.** <br> 34 **HOLDINGS, INC., AND MERRILL LYNCH** <br> 35 **PROFESSIONAL CLEARING CORP.:** | Adam S. Hakki, Richard F. Schwed, Michael P. Mitchell, Shearman & Sterling LLP, New York, NY and Washington, D.C. |
| 37 **FOR DEFENDANTS-APPELLEES** <br> 38 **CREDIT SUISSE AG, CREDIT SUISSE** <br> 39 **SECURITIES (USA) LLC, CREDIT** <br> 40 **SUISSE FIRST BOSTON NEXT FUND,** <br> 41 **INC., AND CREDIT SUISSE PRIME** <br> 42 **SECURITIES SERVICES (USA) LLC:** | David G. Januszewski, Herbert S. Washer, Elai Katz, Jason M. Hall, Margaret A. Barone, Cahill Gordon & Reindel LLP, New York, NY. |

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

2

| | |
|---|---|
| **FOR DEFENDANT-APPELLEE**<br>**GOLDMAN SACHS & CO. LLC:** | Robert Y. Sperling, George Mastoris, Staci<br>Yablon, Winston & Strawn LLP, Chicago,<br>IL and New York, NY. |
| | |
| **FOR DEFENDANTS-APPELLEES**<br>**J.P. MORGAN SECURITIES LLC, J.P.**<br>**MORGAN PRIME, INC., J.P. MORGAN**<br>**STRATEGIC SECURITIES LENDING**<br>**CORP., AND J.P. MORGAN CHASE**<br>**BANK, N.A.:** | Robert D. Wick, Henry B. Liu, John S.<br>Playforth, Jeffrey Cao, Covington & Burling<br>LLP, Washington, D.C. |
| | |
| **FOR DEFENDANTS-APPELLEES**<br>**UBS AG, UBS AMERICAS INC.,**<br>**UBS SECURITIES LLC, AND UBS**<br>**FINANCIAL SERVICES INC.:** | Peter G. Wilson, Katten Muchin Rosenman<br>LLP, Chicago, IL. |
| | |
| **FOR DEFENDANTS-APPELLEES**<br>**EQUILEND LLC, EQUILEND**<br>**EUROPE LTD., AND EQUILEND**<br>**HOLDINGS LLC:** | Carmine D. Boccuzzi, Jr., Cleary Gottlieb<br>Steen & Hamilton LLP, New York, NY. |

Appeal from an order of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

SL-x IP S.à.r.l. (the "Parent Company") and its four subsidiaries, SL-x Technology UK Limited, SL-x Trading Europe Limited, SL-x Technology USA LLC, and SL-x Trading USA LLC (the "Subsidiary Companies") (collectively, "SL-x") filed suits alleging Defendants-Appellees violated federal and state antitrust laws by colluding to force SL-x out of the stock lending market, and asserting state law claims of tortious interference with business relations, unjust enrichment, and violations of New York's Deceptive Practices Act. SL-x appeals from the order entered on September 30, 2021, by the United States District Court for the Southern District of New York (Sullivan, *J.*), dismissing the Parent Company's complaint for lack of Article III standing, dismissing the federal and state antitrust claims in the Subsidiary Companies' complaint as time-

barred, and declining to exercise supplemental jurisdiction over the remaining state law claims. For the reasons that follow, we affirm the decision of the district court. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss only as necessary to explain our decision.

## I.    Background

### A.  The Alleged Antitrust Conspiracy

SL-x was a financial technology startup that offered a patented system for comparing and executing stock lending transactions. The Parent Company is a holding company that operated the SL-x business through the Subsidiary Companies.

EquiLend is a consortium of financial services institutions. EquiLend facilitates stock loans by providing an electronic bulletin board on which stock loan pricing can be posted, as well as back-end services that assist with the settlement of stock loans. During the relevant time period, Defendants, some of the largest banks in the world, were co-owners of EquiLend and some of their employees served on EquiLend's Board of Directors.

SL-x pitched its services to the individual financial institution Defendants comprising EquiLend as a competitor of EquiLend from 2011 through July of 2014. SL-x alleges that during that time, EquiLend served as a forum that facilitated Defendants' agreement to collectively boycott SL-x in that representatives of Defendants attended EquiLend meetings where they discussed whether to do business with SL-x. SL-x also alleges that it attempted to pursue business with third parties, but learned that those efforts failed because Defendants threatened and pressured the third parties to prevent them from doing business with SL-x. SL-x claims that because of Defendants' anticompetitive conduct, it was forced to sell its intellectual property to EquiLend at a steep discount in May of 2015—a sale which EquiLend allegedly pursued so that no other party

could make use of the technology.  SL-x Trading Europe Limited and SL-x Technology UK Limited were dissolved in 2015 and 2016.

### B.  Procedural History

On November 1, 2018, the Parent Company sued Defendants, claiming they had colluded to engage in a group boycott of SL-x, in violation of federal and state antitrust laws.  The Parent Company also brought state law claims for tortious interference with business relations, unjust enrichment, and violations of New York's Deceptive Practices Act.  Defendants moved to dismiss the complaint on the grounds that the Parent Company lacked standing and that the alleged wrongful acts occurred outside the statute of limitations.[1]  The Parent Company revived the Subsidiary Companies—the purported true owners of the claims—but the district court denied its request for leave to assign the claims to the Parent Company or to amend its complaint to join the Subsidiary Companies as plaintiffs.

On May 24, 2019, the Subsidiary Companies filed a separate but virtually identical suit. The parties agreed to consolidate the Parent and Subsidiary Companies' actions and, in accordance with the parties' agreement, the district court ordered that Defendants' fully briefed motion to dismiss the Parent Company's complaint be deemed responsive to the Subsidiary Companies' complaint.  As relevant here, the district court dismissed the Parent Company's complaint for lack of standing and the federal and state antitrust claims in the Subsidiary Companies' complaint as time-barred. The district court declined to exercise supplemental jurisdiction over the remaining state law claims in the Subsidiary Companies' complaint due to the dismissal of the federal claims. The Parent and Subsidiary Companies filed notices of appeal on their respective dockets and the

---

[1] Defendant EquiLend Europe also moved to dismiss for lack of personal jurisdiction, which was denied by the district court and is not at issue on appeal.

1     appeals were consolidated.

2     **II.    Discussion**

3         **A.   Statute of Limitations for Antitrust Claims**

4         The district court properly dismissed SL-x's antitrust claims as time-barred because the

5     causes of action accrued outside of the statutory time period.   This Court reviews "*de novo* a

6     district court's grant of a motion to dismiss, including its legal interpretation and application of a

7     statute of limitations." *DeSuze v. Ammon*, 990 F.3d 264, 268 (2d Cir. 2021) (internal quotation

8     marks  and  citation  omitted).    "When  a  district  court  determines  that equitable tolling is

9     inappropriate, we review the legal premises for that conclusion *de novo*, the factual bases for clear

10    error, and the ultimate decision for abuse of discretion." *Id.*

11        SL-x asserted its antitrust claims under the Sherman Act, 15 U.S.C. § 1, the Clayton Act,

12    15 U.S.C. §§ 15 and 26, and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340 *et seq*., each

13    of which has a four-year statute of limitations period.   15 U.S.C. § 15b; N.Y. Gen. Bus. Law §

14    340(5).   The Parent Company filed its complaint on November 1, 2018 and the Subsidiary

15    Companies filed their virtually identical complaint on May 24, 2019.   The district court treated

16    November 1, 2018 as the relevant filing date; we do the same here.   Accordingly, for SL-x's claims

17    to fall within the statute of limitations, the allegedly conspiratorial acts must have taken place on

18    or after November 1, 2014.

19        A cause of action under the antitrust laws accrues "when a defendant commits an act that

20    injures a plaintiff's business[,]" but the clock can restart in cases if the conspiracy continues

21    through additional overt acts. *Zenith Radio Corp. v. Hazeltine Research*, Inc., 401 U.S. 321, 338

22    (1971).   "[A]ntitrust law provides that, in the case of a continuing violation, say, a price–fixing

23    conspiracy that brings about a series of unlawfully high priced sales over a period of years, each

overt act that is part of the violation and that injures the plaintiff, *e.g.,* each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 67 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Zenith*, 401 U.S. at 338. "[A]n overt act that restarts the statute of limitations is characterized by two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff." *US Airways*, 938 F.3d at 68 (internal quotation marks and citation omitted).

SL-x is incorrect in its contention that the 2015 sale of SL-x's intellectual property to EquiLend was a new overt act that restarted the statute of limitations period. The EquiLend sale allegedly resulted in a steep discount in price for Defendants because of their prior refusals to engage with SL-x. As the district court reasonably concluded, if SL-x had been forced to sell its patents at a low price to any of the potential third-party investors discussed in the complaint, or if Defendants had opted to not purchase the IP at all, SL-x "would have realized the same injury resulting from Defendants' earlier anticompetitive conduct." *SL-x IP S.à.r.l. v. Bank of Am. Corp.*, No. 18CV10179(RJS), 2021 WL 4523711, at *10 (S.D.N.Y. Sept. 30, 2021). Indeed, based on the allegations in the complaint, SL-x's sale of its IP to Defendants was merely a "manifestation" of Defendants' alleged prior agreement to freeze SL-x out of the market. *US Airways*, 938 F.3d at 69; *see also Simmons v. Reich*, No. 20-4114, 2021 WL 5023354, at *3 (2d Cir. Oct. 29, 2021) (collecting cases and explaining that the limitations period does not restart when events are "derivative," "symptoms," or "direct consequences" of earlier wrongdoing). Accordingly, SL-x "ha[s] not shown how any new act could have caused [it] harm over and above the harm that the earlier acts" by Defendants caused it, and therefore, its argument that the 2015 sale was a distinct

violation for which a separate cause of action accrued fails. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (discussing civil RICO cases and explaining that "as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.").

SL-x's alternative argument is that its antitrust claims did not accrue until the 2015 sale to EquiLend because prior to that time, it was unclear how long the boycott would last and damages could not be measured. In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, the Supreme Court held that "antitrust damages [may be] so 'speculative' or 'unprovable' at the time of a defendant's unlawful act (and plaintiff's initial injury) that to follow the normal accrual rule (starting the limitations period at the point the act first causes injury) would [leave] the plaintiff without relief." *Klehr*, 521 U.S. at 190–91 (citing *Zenith*, 401 U.S. at 339–40). "[I]n such a case, a claim for the injuries that had been speculative would accrue when those injuries occurred, even though the act that caused them had taken place more than four years earlier." *Id.* at 191. But the exception created in *Zenith* applies only in "the rare case in which the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them." *Higgins v. New York Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991). This is not one of those rare cases. The possibility that SL-x might have later sold its intellectual property has no bearing on the fact that damages could have been calculated earlier, for example, when SL-x shut down its business in 2014. Because SL-x's damages, while perhaps uncertain, were calculable prior to the 2015 sale, this argument likewise fails.

Nor was the statute of limitations tolled because the defendants fraudulently concealed the alleged conspiracy.

[A]n antitrust plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he establishes (1) that the defendant

concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part.

*State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988); *see also Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir. 2007) ("Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." (internal quotation marks and citation omitted)). "[T]he plaintiff may prove the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Hendrickson Bros.*, 840 F.2d at 1083. Equitable tolling applies only in "rare and exceptional circumstance[s]," and it requires that the plaintiff "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted); *see also Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (observing that equitable tolling is appropriate when a plaintiff "has been prevented in some extraordinary way from exercising his rights" (internal quotation marks omitted)).

Nor was the statute of limitations tolled by reason of the alleged conspiracy.[2]  Regardless

---

[2] Specifically, SL-x alleges the following:

- On August 7, 2013, a JP Morgan executive told SL-x that "there is general agreement among [EquiLend] Directors that industry advances should be achieved from within EquiLend" and that "JP Morgan participated in discussions with other banks about industry direction at the EquiLend meetings." J.A. A-84, 606; *see also id*. at A-89, 611 ("SL-x was told by other market participants that this was due to interference from Goldman Sachs. Key decision-makers at DTCC were 'in Goldman's pocket' and would never consent to providing clearing for SL-x so long as Goldman Sachs opposed it.").

- In February of 2013, it was warned by a Credit Suisse executive that "EquiLend was like 'the mafia run by five crime families' and that SL-x should not underestimate it as a competitor." *Id*. at A-81, 603.

- In July of 2013, the same executive told SL-x that Credit Suisse had changed its mind on its interest in the platform and "would only join after other large players —'the Big Boys'—committed," and "that without approval from EquiLend, SL-x was unlikely to be able to achieve a foothold in the industry." *Id*. at A-81, 603.

1 of whether Defendants continued to meet with SL-x after the disclosure, at bottom, SL-x was aware

2 of Defendants' reluctance to do business with it, was given an explanation for that hesitation, and

3 was told directly by Defendants' executives about the agreement amongst Defendants to prioritize

4 EquiLend's success.  Accordingly, the alleged conspiracy could not have been "depende[nt] on

5 concealment for its success."  Appellant's Br. at 35.  Thus, we conclude that the district court did

6 not abuse its discretion in concluding that equitable tolling did not apply in this case.

7      For the same reasons, the district court correctly concluded that SL-x was at least on inquiry

8 notice of the alleged agreement.  "Inquiry notice requires knowledge of suspicious facts that need

9 not suggest a 'high probability' of wrongdoing but are nonetheless sufficient to induce a reasonable

10 person to investigate."  *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 185 (2d Cir. 2021)

11 (citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650–51 (2010)).  In addition to including in

12 the complaints allegations recounting statements Defendants' executives made directly to SL-x

13 representatives, SL-x repeatedly highlighted the unusual nature of Defendants' rejections that

14 occurred between August 2013 and July 2014.[3]  Because SL-x has alleged that there were several

15 markers that something was amiss, this is not a "rare and exceptional circumstance" where

16 equitable tolling should be applied.  *Smith*, 208 F.3d at 17.  Accordingly, SL-x's antitrust claims[4]

---

- On September 26, 2013, a UBS executive "explicitly discussed" with SL-x "the benefit of being 'inside the club' of EquiLend member banks to effectuate market changes and suggested that any market transition towards an SL-x platform and central clearing of stock loan trades would need to come from inside EquiLend."  *Id*. at A-86, 608.

[3] For example, SL-x describes Defendants' loss of interest in its product as a "strange reversal," J.A. A-82, 603, a "sudden[ ] and unexpected[ ] withdr[awal]," *id*. at A-92, 614, changing "dramatically," "sudden[ly]" *id*. at A-84, 606, and "markedly," *id*. at 85, 607, and being "strangely and suddenly extinguished," *id*. at A-88, 609.

[4] The Donnelly Act was modeled on the Sherman Act and "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result."  *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013) (quoting *X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 518 (1994) (internal quotation marks omitted)).  We see no reason to interpret the Donnelly Act differently than the Sherman Act in this matter.  Accordingly, because SL-x's federal antitrust claims are time-barred, so too are its Donnelly Act claims.  *See Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 101 (2d Cir. 2019) ("As [plaintiff] has not stated a plausible claim for relief under the Sherman Act, its Donnelly Act claim similarly fails.").

1    are barred by the four-year statute of limitations.[5]

2    **III.    Supplemental Jurisdiction**

3    We review a district court's decision not to exercise supplemental jurisdiction over state-

4    law claims for abuse of discretion.  *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102

5    (2d Cir. 2014).  Having properly dismissed SL-x's federal claims and state law antitrust claims,

6    the district court did not err in declining to exercise supplemental jurisdiction over the remaining

7    state law claims.  28 U.S.C. § 1367; *see Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)

8    ("In general, where the federal claims are dismissed before trial, the state claims should be

9    dismissed as well.").

10    **IV.    Leave to Amend**

11    The district court did not abuse its discretion in denying SL-x leave to amend.  Federal

12    Rule of Civil Procedure 15(a)(2) permits a party to amend its complaint with "the court's leave,"

13    which "should [be] freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "We

14    review the denial of leave to amend a complaint under an abuse of discretion standard."  *Jin v.*

15    *Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).  Our review of a district court's denial of

16    leave to replead "involves the appraisal of numerous factors, and a court of appeals exercises

17    considerable discretion in addressing the question."  *Porat v. Lincoln Towers Cmty. Ass'n*, 464

18    F.3d 274, 276 (2d Cir. 2006).  We conclude that the district court did not err in its denial,

19    "[e]specially given that plaintiff's counsel did not advise the district court how the complaint's

20    defects would be cured."  *Id*.  And, while SL-x proposed certain amendments in its reply brief filed

---

[5] Because SL-x's antitrust claims are time-barred based on the filing date of either the Parent Company's complaint (November 1, 2018) or the Subsidiary Companies' complaint (May 24, 2019), we need not reach SL-x's arguments on whether the Parent Company had Article III standing at the time it filed its complaint. *See Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995) ("We are free to affirm on any ground that finds support in the record[.]").

1    in this Court, those changes do not address the identified flaws in the complaints, but rather are

2    largely conclusory statements describing legal findings it requests that this Court adopt.

3    Accordingly, SL-x has failed to demonstrate how any attempt to replead would not be futile. *See*

4    *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022).

5                                *     *     *

6         We have considered all of SL-x's remaining arguments and find them to be without merit.

7    For the foregoing reasons, we **AFFIRM** the September 30, 2021 order of the district court.

8                          FOR THE COURT:
9                          Catherine O'Hagan Wolfe, Clerk of Court